667
14....290
46....446

ALEXANDER N. FULLERTON, Appellee,

*vs.*

CHARLES A. SPRING ET AL., Appellants.

APPEAL IN EQUITY TO THE MILWAUKEE CIRCUIT COURT.

The statute of the Territory provided, among other things, that "bills for relief, in case of the existence of a trust, not cognizable by the courts of the common law, and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue, and not after." By the Revised Statutes of the State, which went into operation the 2d day of January, A. D. 1850, this provision was re-enacted in the same words, and the territorial statute repealed: the enacting and the repealing statute taking effect at the same time: *Held*, that the provision was continued in force without interruption.

The vendor of real estate has an equitable lien, against the vendee and all others having notice, upon the premises sold, for the purchase money; but this lien may be barred by the statute of limitations.

The time limited by the statute, within which a bill may be filed to enforce an equitable lien upon real estate for the purchase money, is ten years from the time when the cause for filing such bill accrued.

The appellee filed his bill in the Circuit Court of Milwaukee county, July 28, 1851, against William L. Pickering, Charles A. Spring and George Mixter, defendants, setting forth in substance, that on June 25, 1836, he, the said Fullerton, being the owner of an undivided moiety of the southwest quarter of section seventeen, of town number seven, north of range number twenty-two east, in Milwaukee county, Wisconsin, sold the same to said defendants, in consideration of certain sums of money then promised to be paid to him therefor ; that the legal title was, at the request of said defendants, given to said Pickering alone ; and that the purchase money therefor was secured to the complainant by bills of exchange,

three in number, for $1,800 each, drawn by Spring
upon Pickering in New York, dated at Chicago, June
25, 1836, at nine, twelve and eighteen months; that
said bills of exchange were, upon presentation, duly
accepted by said Pickering, payable at the Fulton
Bank; that demand of payment was duly made
thereon at the said bank at the maturity of the said
drafts respectively, but that no one of said drafts,
nor any part thereof, was then or at any time after-
wards paid, and that the whole remains unpaid; that
at some time afterwards, though when complainant
does not know, Pickering conveyed to Spring one-half
of the lands so conveyed to him; that neither Spring
nor Pickering had ever been in possession of said
premises, but that Fullerton had had possession about
four years immediately preceding the commencement
of this suit, and remains in possession of all but
twenty acres sold to one Norton, and has paid taxes
and had the charge thereof since 1844; that said
premises have been divided among the tenants in
common by order of the Circuit Court, and that the
west half of the east half of the west half of said
quarter section was set out in such partition to Spring
in severalty; that the share of Pickering, to wit: the
west half of the west half of said quarter section,
was assigned to one Samuel A. Mott; that said Mott
held the legal title of said forty acres of Pickering,
by virtue of a deed of trust executed in 1840, con-
veying said forty acres, with other lands, to Mott, in
trust for said Pickering, but that the trust had been
abandoned, as said Fullerton had been informed and
believed; that nevertheless that forty acres had been
set off in partition to Mott, though the complainant
avers that Mott had no interest in said premises, and

that Mott had conveyed his entire interest (being the legal title only) to said Pickering, by deed executed in March, 1851, and that complainant was not made a party to said partition suit, though he was in possession of the premises ; that Spring was declared a bankrupt in 1842, by the United States Circuit Court for the district of Illinois, and that said defendant Mixter claims the interest of Spring, through a deed from an assignee in bankruptcy, whose name the complainant does not know. Complainant claims to hold an equitable lien upon the said premises now, in the names of Pickering and Mixter, for the whole of said purchase money and interest. Complainant also claims to hold said premises by regular conveyance to him of the rights of the grantees named in certain tax deeds, regular on their face, given pursuant to tax sales made before complainant took possession as aforesaid.

The bill prays for an account of the amount due and unpaid of said purchase money, and for a sale of said premises so set off to Mott and Spring, under a decree of court, for the purpose of paying that amount, with the cost of this suit, and for the usual decree of foreclosure, and for other and further equitable relief ; also the usual prayer of subpoena.

Afterwards the bill of complaint was amended by the insertion of the name of Thomas C. Dodd as defendant, and of an allegation in substance, that Pickering went into bankruptcy in 1843, and his assigns sold his interest in said premises at vendue to said Dodd, but did not give a deed to him, and that said Dodd acted for and in collusion with the said Pickering, and did not obtain any title free from the lien of the complainant. Also, by the insertion of an inter-

rogatory as to whether the said Dodd, in making said purchase, acted as agent of said Pickering; whether he paid any money to the assignee, and how much, and whether he ever received a deed.

Defendants Spring and Mixter demur to the bill, and give substantially the following reasons, among others :

Because a period of more than ten years had elapsed since the time when the right, if ever, accrued to the complainant to commence suit, and before the filing of said bill, and therefore the suit is barred by the statute of limitation (so called) of this State.

Because the claim attempted to be set up by the bill is of such an ancient and stale character that the Court of Chancery will not aid to enforce it.

Because the allegation that the complainant is the holder of the rights of the grantees in certain tax deeds furnishes no grounds for this suit; such tax-title holder has a perfect remedy at law, if he has anything.

Because the bill does not show that all or any of the steps precedent to the giving of such tax deeds were regular, so as to give any validity to such tax title.

At a special term the cause came on to be heard and argued on the bill and demurrer thereto, and the same being argued and submitted, it was ordered by the court that the demurrer be overruled, without costs; from which decision an appeal is brought to this court.

*Waldo & Ody*, for the appellants.

*Brown & Ogden*, for the appellee.

*By the Court*, SMITH, J. However strong the
equity presented in behalf of the complainant, by
his bill filed in this case, we can perceive no way of
avoiding the statute of limitations. Admitting that
the lien of the complainant for the purchase money
remained, a cause of action accrued to enforce it on
failure to pay the bills of exchange. The last bill
became due December 28th, 1837. The statute of
limitations enacted by the territorial legislature went
into operation the 4th day of July, 1839. The
provision of that statute particularly applicable to
cases of this kind, is section 40, page 263, of the Ter-
ritorial Revised Statutes, and is in the following
words :

"Bills for relief, in case of the existence of a trust,
not cognizable by the courts of common law, *and in
all other cases not herein provided for*, shall be filed
within ten years after the cause thereof shall accrue,
and not after."

By the Revised Statutes of the State, which went
into operation the 2d day of January, 1850, the fore-
going section was re-enacted in the same words, and
the territorial statute repealed. See *R. S., chap.*
127, § 27.

In our judgment, it is clear that the effect of this
repeal and re-enactment was to continue the uninter-
rupted operation of the statute. Such is believed to
be the proper rule of construction in cases where the
repealing act re-enacts a provision of the old statute
in the same words. There is no change in the law,
and the re-enactment of the new, is simultaneous
with the repeal of the old provision, and both are
the same. It was said on the argument, that there
was an instant of time between the taking effect of

the new statute, and the expiration of the old. But it is difficult to perceive by what process such instant of time could be estimated. The new statute took effect at the same instant with the repealing statute, When the legislature re-enacted the same provision, and provided for its taking effect at the same time as the repeal of the old statute, it is clear that they intended to continue such provision in force without interruption.

The bill in this case was filed the 28th day of July, 1851. More than ten years had elapsed from the time when the cause of complaint accrued, before the filing of the bill, and more than ten years from the enactment of the statutes of the Territory, which took effect July 4, 1839.

Nor is the case relieved by the allegation of title through tax deeds, and possession. The bill is not filed with a view to remove a cloud upon the title thus alleged to have been acquired, nor do we see how it can be sustained with that view. If the complainant has thus acquired a good and valid title, he has an adequate remedy at law, or he may frame his bill for the purpose of quieting his title.

It may seem hard that a loss shall be sustained, or apparent injustice done, on account merely of the lapse of time, without any change in the equitable relations of the parties. But the statute is imperative, and we have no discretion but to carry it into effect. We are unable to perceive any mode of relieving the plaintiff of its operation.

This view of the case renders it unnecessary to consider the other points raised by the demurrer. The order of the Circuit Court must be reversed.

Order reversed, with costs.

NOTE.—Since the foregoing opinion was written, my attention has been called to the case of *Wright vs. Oakley et al.*, 5 *Met. Rep.* 404, where the same subject is discussed by Chief Justice Shaw, who delivered the opinion of the court, and which is authority for the positions here assumed.

SMITH, J.