[These cases, because of the pendency of petitions for rehearing, did not reach me in time to be published in their chronological order.—REPORTER.]

THE STATE OF IOWA, Plaintiff, v. S. F. PROUTY, Judge of the District Court of Polk County, Defendant.

Contempts:  REPEAL OF LIQUOR STATUTES.  Acts Twenty-first Assembly, chapter 66, sections 1-3, authorize actions to enjoin liquor nuisances.  Acts Twentieth General Assembly, chapter 143, provides that the building in which intoxicating liquors are sold in violation of law are nuisances.  Section 12, declares that such nuisances may be perpetually enjoined, and any one violating such injunction shall be punished as for a contempt by fine or imprisonment.  These provisions were substantially, though not in the exact words, re-enacted in Code 1897, sections 2384, 2405-2407.  Idem sections 49, 51, provide that all statutes adopted prior thereto except appropriations, and all public and special acts, the subjects whereof are revised therein or are repugnant thereto, are repealed, but the repeal of existing statutes shall not effect any act done, any right accruing, nor any proceeding had before the taking effect of the repeal. Held, error for the court to dismiss contempt proceedings against a person enjoined from maintaining a nuisance under the old law, but violating it after the adoption of the new, since the old statutes were not repealed and re-enacted so as to destroy their effect, but were continued into the new, and the injunction restraining their violation was just as effectual as though granted under the new, and its violation could be punished thereunder.

THURSDAY, DECEMBER 20, 1900.

THIS is a certiorari proceeding brought in this court to test the validity of an order made by the defendant discharg-

ing one Mark Chiesa from the charge of contempt in vio-
lating an injunction restraining him from selling intoxicat-
in liquors.—*Annulled.*

*Milton Remley,* Attorney General, *Charles A. Van
Vleck,* Assistant Attorney General, *John McLennan,* County
Attorney, and *Ezra D. Marshall,* for the State.

*Howe & Miller* for defendant.

DEEMER, J.—In the year 1895, one Mark Chiesa was
perpetually enjoined from selling intoxicating liquor in
Polk County, Iowa. Thereafter, and in December of the
year 1899, an information was filed showing that the in-
junction had been violated, and asking that a writ of attach-
ment issue commanding Chiesa to appear and show cause
why he should not be punished for contempt. Pursuant to
this application, a writ was issued, and Chiesa was brought
before the court. On his appearance he filed a demurrer to
the information based on the ground that the laws provide
no penalty, for the violation of an injunction granted prior
to the adoption of the present Code. This demurrer was
sustained, and Chiesa was discharged. This proceeding was
instituted to review the action of the trial judge in discharg-
ing Chiesa.

The ultimate question involved is so well stated by
counsel for the defendant that we adopt it as the basis for
the opinion. It is as follows: "Is a person who, since the
1st day of December, 1899, has violated the terms and con-
ditions of an injunction against the unlawful sale of intoxi-
cating liquors granted prior to the adoption of the the new
Code, subject to punishment therefor? or, in other words,
does the law provide a penalty for the violation, since the
new Code went into effect, of an injunction against the un-
lawful sale of intoxicating liquors granted prior to its adop-
tion?" The provision of the Code of 1897, with reference

to punishment for violating injunctions, reads as follows: "In case of the violation of any injunction granted under the provisions of this chapter; the court, or in vacation a judge thereof, may summarily try and punish the offender. The proceedings shall be commenced by filing with the clerk of the court an information under oath setting out the alleged facts constituting such violation, upon which the court or judge shall cause a warrant to issue, under which the defendant shall be arrested. The trial may be had upon affidavit, or either party may demand the production and oral examination of the witnesses. A party found guilty of contempt under the provisions of this section shall be punished by a fine of not less than $200 nor more than $1,000, or by imprisonment in the county jail not less than three nor more than six months, or by both fine and imprisonment." Section 2407. Prior to the adoption thereof the law relating thereto read as follows: "Actions to enjoin nuisances as authorized by section 12, chapter 143, Acts 20th General Assembly, may be brought in the name of the state, * * * and it shall be the duty of the county attorney * * * (c) to institute and prosecute such action for the abatement thereof," etc. Acts 21st General Assembly, Chapter 66, section 1. Section 2 of the same act provides for the issuance of a temporary writ of injunction. Section 3 reads as follows: "In case of the violation of an injunction granted in such action, the court, or in vacation the judge thereof, shall have power to try summarily and punish the party guilty thereof, as required by section 12, chapter 143, Acts 20th General Assembly." Section 4, chapter 73, Acts 22d General Assembly, provides that "in any action to enjoin a nuisance," as authorized by the acts of the general assembly before mentioned, "the injunction shall be binding throughout the district in which the action is brought"; and further provides that "any person enjoined in such action, who shall, while such injunction remains in force, again engage in * * * the selling, * * * contrary to law, of any intoxicating liq-

uor, anywhere within the jurisdiction of the court, shall be
deemed guilty of contempt of court, and punished accord-
ingly." Chapter 143 of the Acts of the 20th General As-
sembly contains provisions declaring buildings in which in-
toxicating liquors were sold or kept for sale, in violation of
law, nuisances, and authorizing the abatement thereof. It
further provides that "any citizen of the county * * * may
maintain an action in equity to abate and perpetually enjoin
the same, and any person violating the terms of any injunc-
tion granted in such proceedings shall be punished as for con-
tempt by a fine of not less than $500 nor more than $1,000
or by imprisonment," etc. See section 12 of that act. These
provisions are substantially re-enacted in the Code of 1897.
Section 2384 of that Code makes the building in which in-
toxicating liquor or liquors are sold contrary to law a nuis-
ance, and provides for a fine of not less than $300, nor more
than $1,000, and for the abatement of such nuisance. Sec-
tion 2405 provides for an action in equity to abate the nuis-
ance by any citizen of the county; for the allowance of   a
temporary writ of injunction; and that when the injunction
is granted it shall be binding throughout the district in
which it was issued, and that the violation of the provisions
of the chapter by the selling of liquor anywhere within the
judicial district shall be punished as a contempt as provided
in the chapter. Section 2406 provides that the action may
be brought in the name of the state, by the county attorney,
who shall prosecute the same, or by any citizen of the
county. Section 2407 we have already quoted. Section
2408 provides for the abatement of the nuisance when estab-
lished. The chapter referred to in these sections is chapter
6 of title 12 of the Code. Title 12 relates to the "Police of
the State," and chapter 6 to "Intoxicating Liquors." The
acts of the general assembly to which we have referred are
headed "Relating to the Sale of Intoxicating Liquors" in
the Acts of the 20th and 21st General Assemblies, and "To

Regulate the Sale of Intoxicating Liquors" in the Acts of
the 22d.  They are each and all amendatory of chapter 6,.
title 11, Code 1873; the title being headed, "Police of  the
State," and the chapter, "Intoxicating Liquors."  The Code
of 1897 further provides that "all public and general stat-
utes adopted prior to the present extra session of the general
assembly, excepting acts appropriating money, * * * and all
public and special acts the subjects whereof are herein re-
vised or which are repugnant thereto are repealed, subject to
the limitations and exceptions hereinafter explained. * * *"
Section 49.  Section 50; "The Code shall take effect ninety
days after the final adjournment of the extra session of the
26th General Assembly, until which time existing statutes
continue in force," etc.  Section 51: "This repeal of exist-
ing statutes shall not affect any act done, any right accruing
or which  has accrued or been established, nor any suit or
proceeding had or commenced in any civil cause before the
time when such repeal takes effect; but the proceedings in
such cases shall be conformed to the provisions of the Code
as far as consistent."  Section 52: "No offense committed,
and no penalty or forfeiture incurred under  any statute
hereby repealed and before the repeal takes effect, shall be
affected by the repeal; except that, when a punishment, pen-
alty or forfeiture is mitigated by the provisions herein con-
tained, such provisions shall be applied to a judgment to be
pronounced after the repeal."

These are all the statutory provisions involved in the
question now under consideration.  Referring back to section
2407 of the Code, it will be noticed that it reads: "In case
of a violation of any injunction granted under the provisions
of this chapter," the court may summarily try and punish
the offender, etc.  It will also be observed that the injunc-
tion that Chiesa is charged with violating was not, strictly
speaking, granted under the provisions of that chapter.  It
was passed in the year 1895, under the provisions of the acts
of the general assembly to which attention has been called.

For this reason, it is argued that there is no statute under which the defendant may be prosecuted for acts in violation of the injunction, done after the Code of 1897 went into effect. This contention is the pivotal point in the case.

Is it true that one who violates a decree of. injunction issued before the present Code went into effect cannot be punished either under the acts of the general assembly, before quoted, or under the provisions of the new Code? It cannot be gainsaid, we think, that the original decree entered in the case brought to enjoin the unlawful sale of liquor before the present Code went into effect was unaffected by the adoption of the new Code. Had the legislature repealed the law under which it was granted, and not re-enacted practically the same law, it might be said that the decree was thereby abrogated. The law enacted was in virtue of the police power of the state, in aid of the enforcement of conduct tending towards the improvement of public morals. A repeal of that law would, no doubt, have annulled the decree in so far at it is related to acts committed after the repealing statute became effective. But the acts of the legislature prohibiting the unlawful sale of intoxicating liquors were not repealed, as we understand it. The repeal and simultaneous reenactment of substantially the same statutory provisions is not to be construed as an implied repeal of the original statute, but as a continuation thereof, so that all interests, under the original statute, remain unimpaired. *Hancock v. Perry Tp.,* 78 Iowa, 555; *United Hebrew Association v. Benshimol,* 130 Mass. 327; *Fullerton v. Spring,* 3 Wis. 667; *Wright v. Oakley,* 5 Metc. Mass. 400; *Pacific Mail Steamship Co. v. Joliffe,* 2 Wall. 450, (17 L. Ed. 805). The same rule applies to general revisions of existing laws that are substantially re-enacted. *Scheftels v. Tabert,* 46 Wis. 439. And also to criminal statutes. *State v. Wish,* 15 Neb. 448, (19 N. W. Rep. 686); *State v. Gumber,* 37 Wis. 298. In practical operation and effect, the new statutes are to be considered as a continuance and modification of old laws,

rather than as an abrogation of the old and the re-enactment of new ones. See, also, *Pratt v. Commissioners,* 139 Mass. 563, (2 N. E. Rep. 675) ; *State v. Bemis,* 45 Neb. (64 N. W. Rep. 350) ; *Stenberg v. State,* 50 Neb. 127, (69 N. W. Rep. 851) ; *State v. Kibling,* 63 Vt. 643, (22 Atl. Rep. 613) ;. *Anding v. Levy,* 57 Miss. 58. In *State v. Kibling, supra,* the court, in speaking of the re-enactment of a prohibitory law as applied to a case commenced before the new act went into effect, said: "The re-enacting of the prohibitory law did not change or modify any of its provisions. It simply declared that the law was re-enacted and to remain in force, as to the offenses found against the respondent, the same as it was before. There was nothing in the act re-enacting it repugnant to, or inconsistent with, the provisions of the laws as they had heretofore existed, nor was anything thereby validated so far as it related to the offenses found against the respondent, which was invalid before. It neither added to nor took away anything from the existing law, so far as applicable to this case, but declared the law to exist as it had existed. As said in *Kelsey v. Kendall,* 48 Vt. 24: 'The portion of an amended statute which is merely copied without change is not to be considered as repealed and again enacted, but to have been the law.' "

Counsel for defendant meet these propositions by saying that the re-enacting statute must be in the same words as the original before the rules above announced will apply. Generally speaking, this is true; for, when a statute is revised, and a provision contained in it is omitted in a new statute, the inference to be drawn is that a change in the law was intended; and where a statute is revised, or one act framed from another, some part being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. *Pingree v. Snell,* 42 Me. 53 ; *Lehman v. Robinson,* 59 Ala. 219 ; *Ellis v. Paige,* 1 Pick. 43. But where the prohibitory part of the law in the revision is in substantially the same language as in the original act, and

there is a manifest purpose to continue the old law, we do not think such re-enactment repeals the prior law in such sense as to annull or abrogate decrees and proceedings had thereunder. The difference in the language referring to contempt we shall advert to hereafter.

We start, then with the assumption that the prohibitory part of the statutes relating to the sale of intoxicating liquors are carried forward in the Code of 1897 in substantially, if not exactly, the same language found in the original acts, and that the re-enactment of these laws is but a continuation thereof. If that be true, then the original decree against Chiesa, restraining him from the unlawful sale of liquors, was not affected by the adoption of the new Code. It is as virile now as when originally granted. But it is contended that power of enforcement by contempt proceedings no longer exists, for the reason that such remedy is now permitted only when the injunction was granted under the provisions of the chapter of the new Code relating to intoxicating liquors. Attention has already been called to the fact that, strictly speaking, the injunction was not granted under the provisions of the Code of 1897. But as the prior laws were carried into that statute, and are continued by it uninterruptedly in full force and effect, it is doing no violence to the language and spirit of the act to say that in effect, they are a part of that chapter, and that the injunction is as if granted under the provisions thereof. If the re-enactment is but a continuance of the old law, it relates back to the old, and the old is a part of it as much as if there had been no re-enactment. The fallacy in defendant's contention, it seems to us, is found in the assumption that the entire chapter must be a re-enactment of some previous law in order that the rules herein announced may obtain. That it is not a re-enactment of a like chapter found in another Code must be conceded, and it is also admitted that some of the provisions found in the old acts are changed by the Code; but, as we have said, the prohibitory part of the law, the remedy by in-

junction, and various other matters relating to procedure, are re-enacted in the new Code in substantially, if not exactly, the same language as in the original acts, and it follows that the original decree is not affected by the adoption of the new Code. But it is claimed that section 49 of the Code of 1897 expressly repeals all prior statutes, save those therein mentioned and excepted, and that, as there has been an express repeal of the act under which the decree was rendered, that decree became inoperative, and could not thereafter be enforced. The rules heretofore announced seem to apply to a case of express repeal to the same extent as where the statute is repealed by implication; and whatever words of repeal are employed, if that repeal be accompanied by a re-enactment of the original statute, or of its substantial provisions in any other form of expression, the continuity is not broken, and the original act cannot be said to be repealed in such sense as to affect decrees rendered under the original enactment. All rights created under the old statute remain under the nominally new one. The case, on principle, seems to be quite akin to that of instantaneous seisin, where a man by one act receives and passes back an estate. There the consequences of ownership do not attach to him. These views are well supported by authority. *City of St. Louis v. Foster,* 52 Mo. 513; *State v. Gumber,* 37 Wis. 298; *State v. Baldwin,* 45 Conn. 134; *Martindale v. Martindale,* 10 Ind. 566; *Randolph v. Larned,* 27 N. J. Eq. 557; *Capron v. Strout,* 11 Nev. 304; *United Hebrew Assn. v. Benshimol,* 130 Mass. 325; *Pacific Mail Steamship Co. v. Joliffe,* 2 Wall. 450, (17 L. Ed. 805); *Middleton v. Railroad Co.* 26 N. J. Eq. 269; *Lisbon v. Clark,* 18 N. H. 234; *State v. Wish,* 15 Neb. 448, (19 N. W. Rep. 686).

That this is the proper construction of the repealing section of the new Code we have no doubt, in view of the sections immediately following, one of which provides that the repeal shall not affect any act done, any right accruing, or which has accrued or been established, nor any suit or pro-

·ceeding had or commenced, before the time when such repeal
takes effect. When the Code took effect, a decree had been
·granted against Chiesa restraining him from the sale of in-
toxicating liquors unlawfully, and, as we have seen, that de-
·cree was not affected by the new Code. As soon as the decree
was entered, the plaintiff therein had the right to enforce
the same by contempt proceedings. That was the only effi-
cacious manner of enforcing the decree. It seems to us that
it was such a right as was saved by the statute quoted. True,
it, in a sense, related to the remedy, and remedies may be
·changed by the legislature from time to time, as necessity or
fancy may dictate. But rights, as distinguished from rem-
·edies, cannot be changed. If, as defendant contends, the new
Code repealed all prior statutes with reference to contempt
proceedings under valid nuisance decrees, then there is no
method by which such decrees may be enforced. That the
legislature cannot take away all remedies is a principle of
·constitutional law so well settled that a citation of authori-
ties is scarcely needed in its support. See, however, *Hol-
land v. Dickerson,* 41 Iowa, 367; Cooley, Constitutional
Limitations (6th Ed.) p. 350; *State v. Bank,* 1 S. C. 63.
If the remedy by proceedings for contempt is taken away,
then the original ·decree is a barren thing. That the legis-
lature did not intend, in adopting section 2407 of the Code,
to take away all rights under existing decrees, is clear. As
a general rule, the legislature cannot set aside or vacate a
judgment. That is a judicial function, to be exercised by
the courts. *Wieland v. Shillock,* 24 Minn. 345; *Pensyl-
vania v. Wheeling & B. Bridge Co.,* 18 How. 421, (15 L.
Ed. 435); *U. S. v. Klein,* 13 Wall. 128, (20 L. Ed. 519);
·Cooley, Constitution Limitations 94.

When it is conceded that the original decree was not af-
·fected by the adoption of the Code, it follows that
·the legislature did not intend by the repealing section quoted
to take away all remedies thereunder. If it be conceded
·that the prior statute with reference to contempt proceed-

ings was repealed, it by no means follows there was no power to enforce the decree. Courts have inherent power to enforce decrees rendered by them, and, when injunctional decrees are violated, they have undoubted power to enforce obedience thereto by contempt proceedings. But we do not think section 2407 repealed prior statutes so as to take away the power that theretofore existed of enforcing valid decrees enjoining nuisances, by contempt proceedings. It was a right that had accrued and was established by the decree.

We do not, of course, dispute the proposition that the legislature might have abrogated the decree had it seen fit to repeal the prohibitory liquor law. The plaintiff therein was either the state, or an individual representing the state, and the legislature, acting for that plaintiff, had the undoubted right to change its policy and allow the free and unrestricted sale of liquor. Had it done so, it would, of course, have taken away from itself the right to enforce prior decrees enjoining such sales. In other words, as the decree was in favor of the state, in aid of the enforcement of its police power, it had the right should it conclude that the legislation under which it was issued was unwise, to repeal that legislation, and thereby abrogate the decree. But, as we have seen, it did not repeal the prohibitory liquor laws of the state. There never was a time when it was lawful for Chiesa to sell liquor without having a permit or complying with the provisions of the mulct law, and, as the decree was in no wise affected by the repealing section of the Code, it would be illogical to hold that the legislature intended to take away from itself all remedies that it had under that decree. Counsel rely on *West v. Bishop,* 111 Iowa, 410, as an authority for the holding of the trial judge. That case is not an authority for his position, as we understand it. It was held in that case that there were material changes in the law with respect to statements of consent, that there was an express repeal of prior statutes relating thereto, and that the sale of intoxicat-

ing liquors was a mere privilege, lost through the repeal. If the so-called "right" to sell liquors was a right, and not a mere privilege, the holding would, perhaps, have been different from what it was. The case is made to turn on a distinction between a right and a privilege. In this case we have seen that there was no change in the prohibitory part of the intoxicating liquor law; that the original decree granted in the case in which Chiesa was enjoined was not abrogated or vacated by the adoption of the Code; that the plaintiff in the case in which it was granted had the right to enforce that decree, which was not to be taken away from him unless the entire prohibitory law was repealed; and that this right was not affected by subsequent legislation. We also are of the opinion that the right referred to was saved by section 51 of the Code, and that it should have been enforced by the court. The proceedings are therefore annulled, and the trial court is directed to take such further action in the contempt proceedings as is in harmony with this opinion. The motion to tax attorney's fees is overruled.—ANNULLED.