O'Brien County, Appellee, v. Bernhard I. Mahon, Defendant, and The American Bonding and Trust Co. of Baltimore, Md., Appellant, and Bernhard I. Mahon, Henry Gund, The John Gund Brewing Co., defendants in Cross-petition.

Intoxicating liquors: BONDS: SUFFICIENCY. A liquor dealer's bond providing for a compliance with the laws of the State is valid, although the statute in force at its execution was repealed or superseded by the Code of 1897; and the bond would be good as a

common law obligation even though not in conformity with the statute.

**Mulct tax:** LIABILITY OF SURETIES. The sureties on a saloon keeper's bond are liable for the payment of the mulct tax.

**Same.** The sureties on a liquor dealer's bond cannot escape liability for the mulct tax on the ground that by failure of the principal to pay the tax he is no longer operating under the law.

**Same.** Mere failure to collect a mulct tax when due will not discharge the sureties on a liquor dealer's bond.

**Same.** The sureties on a liquor dealer's bond are liable for the full tax for the quarter in which the obligation arose.

**Same.** Failure of a liquor dealer's bond to describe the place where the business is to be conducted, will not invalidate the same.

**Interest.** Interest may be recovered in a suit on a liquor dealer's bond.

**Bond:** CONSIDERATION. A liquor dealer's bond given to secure immunity under the mulct law, which is accepted as sufficient and operated under, is supported by a sufficient consideration.

**Recovery of mulct tax.** The county may recover the entire mulct tax, though one-half is to go to the municipality.

**Same.** A county may recover from the sureties on a liquor dealer's bond without first exhausting the property of the principal.

*Appeal from O'Brien District Court.*— HON. JOHN F. OLIVER, Judge.

FRIDAY, FEBRUARY 10, 1905.

ACTION to recover a mulct tax from the sureties on the bond of one Mahon, who was engaged in conducting a saloon in the town of Sanborn, in O'Brien county. The bonding and trust company interposed various defenses, to some of which we shall refer during the course of the opinion; and it also pleaded what it called a cross-petition in equity against Mahon, Henry Gund, and the John Gund Brewing Company, wherein it asked that, if plaintiff obtained judgment against it, the amount thereof be declared a lien upon the property whereon the saloon had been conducted,

that plaintiff be required to sell this property before resorting to this defendant, and that special execution against the property be issued in its favor for the amount of any judgment rendered against it, and that it have judgment against Gund and the Brewing company for any amount found due the plaintiff, and for general relief. Various other matters were pleaded in an amendment to this cross-petition, which need not be referred to at this time. To the cross-petition and the amendment thereto demurrers were filed, which eliminated them from the case. A jury was waived, and the case was tried to the court, resulting in a judgment for plaintiff against Mahon and the Bonding and Trust company, and the Bonding and Trust company appeals.— *Affirmed.*

*Cory & Bemis,* for appellant.

*Joe Morton,* for appellee county.

*C. A. Babcock,* for appellees Gund and Gund Brewing Co.

Deemer, J.— The pleadings are very voluminous and complicated, covering more than 20 printed pages of the abstract, and we shall not attempt to set them out *in extenso.* The case was tried upon an agreed statement of facts, which, so far as material, are as follows: Bernhard I. Mahon was conducting a saloon under the so-called "Mulct Law" at Sanborn, in the county of O'Brien, during the year 1901, and on April 15th of that year he filed a bond with the Bonding and Trust company as sureties, conditioned that he (Mahon) "should faithfully observe and comply with all the provisions of the laws of the State of Iowa relating to the keeping and selling of intoxicating liquors; and especially with the requirements of the act of the 25th General Assembly [page 63, chapter 62] known as an act to tax the traffic in intoxicating liquors, and to regulate and control the same, and shall pay

all damages that may result from the sale of intoxicating liquors upon the premises occupied by Mahon." Mahon failed to pay the mulct tax for the quarters ending June 30 and September 30, 1901, of $300. This action was to recover said tax, with interest and penalties, from Mahon and the surety on his said bond. The action in so far as the penalties are concerned was dismissed by the plaintiff, and we shall have no occasion to consider that matter further. Judgment was rendered against Mahon and his surety, for the amount of the quarterly taxes, with interest, and the appeal is from that decision.

Appellant's argument does not comply with our present rules, and we have had much difficulty in ascertaining just what its points are which are relied upon for a reversal. Taking up what is called its "argument," we extract the following as being the claims relied upon: First, the defendant bonding company is not liable on its bond for the amount of the tax in any event; second, it is only liable for such taxes as accrued while Mahon was operating under the mulct law, and as soon as he failed to pay the tax he was not operating thereunder, and defendant is not liable for anything accruing after Mahon's failure to pay; third, it is not liable because the plaintiff county failed and neglected to collect the tax from Mahon, who was responsible when the tax accrued, but who thereafter frittered away his property; fourth, the county cannot recover the full tax, because one-half of it is due the town of Sanborn; fifth, the bond does not cover the tax for the quarter ending June 30th, for the reason that it was not given until April 15th; sixth, the bond does not describe the property and is therefore void; seventh, the bond does not cover interest; eighth, the bond is without consideration; ninth, the county, by inaction, lost its lien against the property whereon the business was conducted, and the surety is therefore released; tenth, the county should have resorted to its lien upon Mahon's property, and cannot hold the defendant bonding company without first exhausting that property,

or showing that the tax cannot be collected therefrom.   If there be any other points concealed in this so-called argument of 31 pages, we have been unable, after careful scrutiny, to discover or discern them, although in the statement of the case it appears that the bonding company is also relying upon the fact that the law under which the bond is said to have been given has been repealed, and was not in force when the bond was executed, and it is therefore void.   We shall take up these points as nearly in order as possible, although the last suggestion should perhaps be first disposed of.

It is true that when the bond was given the act of the General Assembly referred to in the conditions thereof had been repealed, or, more properly speaking, superseded by 1. BONDS: suffi-  the Code of 1897; but, as practically all the ciency.    provisions thereof were re-enacted in that Code, there was no hiatus, and such parts of the Acts of the Twenty-Fifth General Assembly as were carried into the Code of 1897 are and have been in full force and effect ever since their original enactment.   *State v. Prouty,* 115 Iowa, 657.   But conceding *arguendo* that they were all repealed, the bond is so conditioned as that the bonding company expressly agreed that " Mahon should faithfully observe and comply with all the provisions of the laws of the State of Iowa relating to keeping and selling intoxicating liquors."   It was for the sum of $3,000, and fully complied with subdivision 3 of section 2448 of the Code.   The other provisions of the bond may therefore be regarded as surplusage.   They do not contemplate doing an illegal act; nor was the bond given to enable Mahon to violate the law.   The provision we have quoted was to secure his observance of the law, and was therefore valid.   Even if the bond did not strictly conform to the statute, it is good as a common-law obligation, and may be enforced as such.

But it is said that the surety company is in no event liable for the tax imposed by sections 2432 to 2445, inclusive, of the Code.   That question has been decided adversely to

appellant. See *Breeding v. Jordan,* 115 Iowa, 567; *Guedert v. Emmet County,* 116 Iowa, 44; *Knoll v. Marshall Co.,* 114 Iowa, 647; *Knoll v. Marshall Co.,* 102 Iowa, 573. An attempt is made to distinguish these cases on the theory that they were each decided under the acts of the Twenty-Fifth General Assembly, and not under the present Code. But this is not true. See the *Guedert Case, supra.*

*2. MULCT TAX: liability of sureties.*

The bonding company insists that, as Mahon failed to pay the taxes which are here sought to be recovered, he was no longer operating under the mulct law, and that it never became liable for these taxes. Reliance is placed upon *Gorman v. Williams,* 117 Iowa, 560, and *Breeding v. Jordan, supra.* These cases are not in point, and really have no bearing upon the proposition here involved. The county may elect to collect the mulct tax by action on the bond, or to prosecute the principal for illegal sales made by him after failure to pay the tax. In any event, the tax is due and payable no matter whether the principal complies with the law or not. Appellant's argument, if accepted, would defeat any recovery from a surety on a liquor dealer's bond, and is manifestly unsound. *Breeding v. Jordan, supra,* decides this question adversely to appellant. See, also, *In re Smith,* 104 Iowa, 199.

*3. SAME.*

Plaintiff did not collect the tax from Mahon when it became due, and it is said that because of its failure to do so the surety on his bond was and is released and discharged. Inaction on plaintiff's part is all that can be charged. It has done nothing to release its lien; and in no event could there be anything more than a *pro tanto* discharge. But the county had a double remedy, and it could resort to either. By resorting to one it did not necessarily waive the other. See cases heretofore cited. Mere inaction on the part of the county did not release the surety. *Read v. Am. Surety Co.,* 117 Iowa, 10; *Whitehouse v. Am. Surety Co.,* 117 Iowa, 328.

*4. SAME.*

The bond was given April 15th, and the action is for quarterly installments, one of which was due June 30th or July 1st. It is said that the bond cannot be made retro-active so as to cover the entire first quarter. There are two all-sufficient answers to this contention. The first is that the tax is payable in advance, and the second is that whoever is assessed shall be liable for at least one quarterly installment, and is in no event entitled to any rebate, unless he discontinues the business before the expiration of the second period or quarter. Code, section 2436. In any event, the principal is liable for the full tax for the quarter in which he commenced business; and his surety was also liable for the same amount. Code, sections 2436, 2448. To that extent the bond may be said to be in a sense retroactive.

5. Same.

Next it is said that the bond does not describe the prop-erty. There is no requirement that it should, although it is perhaps better that it do so. See Code, section 2448. The provision in the bond, is, in effect, that where-ever Mahon was engaged in the business of sell-ing or keeping for sale intoxicating liquors within the county of O'Brien he should comply with all the provisions of the law. This is sufficiently broad to cover the case, and, even if the property ought to have been described, we do not see how the surety may avail himself of the omission. *Starr v. Blatner*, 76 Iowa, 356. There was nothing illegal or con-trary to public policy in this broad condition. The bond was given to enable Mahon to meet the requirements of the mulct law, and to permit him to escape the penalties of the prohibitory liquor law. It was not made primarily to enable him to violate the law, but to secure immunity under its express provisions.

6. Same.

II. Plaintiff dismissed its action as to penalties, but did seek to recover interest. The latter was allowed it. No citation of authorities is needed to show that interest may be recovered on such a bond as was here given.

7. Interest.

III. The claim that the bond was without considera-tion is bottomed on the thought that, as it was given under a law which had been repealed, there was no authority there-for, and consequently it was and is void. We have already seen that the law was not repealed by the Code. But, if it were technically re-pealed, it does not follow that the bond is void. It was given to secure the immunities provided by the mulct law as found in the Code, and under the conceded facts it operated to se-cure them. It was accepted by the authorities as being sufficient under the law, and Mahon had the advantage thereof. This was a sufficient consideration. *Potter v. State,* 23 Ind. 550.

8. BOND: con-
   sideration.

IV. It is said that the county cannot recover the full tax for the reason that one-half of it goes to the town of Sanborn. The entire tax is payable to the county treasurer, and the law in its entirety authorizes and di-rects the county and its officials to collect it. When collected, one-half the $600 is to be paid to the municipality in which the business is conducted. Clearly, the county is authorized to sue for the entire tax or for any quarterly installment.

9. RECOVERY OF
   MULCT TAX.

V. The remaining objections may be considered under one head. They relate to the inaction of the county, and to its failure to collect the tax from the property used by Mahon in the conduct of his business. We have already observed that mere inaction of the county is no defense for the surety. But it is argued that, as the surety cannot be subrogated to the rights of the county, the county should first exhaust its remedies against the principal before resorting to the surety. As already stated, the county has a double remedy where the mulct law is in force. The payment of the tax operates as a quasi license or permission to do business. The license fee or tax charged is secured by a lien upon the property, and may be enforced in the manner pointed out by statute. It is

10. SAME.

also a personal charge against the party who conducts the business, and, as noted, this charge is secured by the bond given under the provisions of the law.    The county has the right to pursue either remedy.    *Guedert v. Emmet Co.,* *Knoll v. Marshall Co., supra.*    The surety company knew, or should have known, of its liability on this bond to pay the tax, and that it could not have subrogation to the rights of the county.    With this knowledge it undoubtedly charged a fee commensurate to the risk assumed, and, while it may not be entitled to subrogation, it may undoubtedly recover the amount it is compelled to pay from the principal, Mahon. We have assumed, without deciding, that no subrogation may be had to the rights of the county, because all parties assume this to be the law.

No complaint is made of the rulings on the pleadings attacking the surety company's cross-petition; nor is any complaint made of the final decree in so far as any issue was tendered thereby.

We have now considered every proposition which we are able to discover in the prolix brief filed by counsel for appellant.    If any point has escaped us, it has been due to their failure to follow our rules, and they, of course, have no cause for complaint.    We might well have refused to consider the case because not presented according to rule, but have preferred to take up such points as seem to be presented, and to decide them on their merits.

Finding no error, the judgment is *affirmed.*