## CONSTITUTIONALITY OF THE ACTS RELATING TO THE MUNICIPAL COURT OF CLEVELAND.

Common Pleas Court of Cuyahoga County.

ALBERT MENDELSON, ON BEHALF OF THE CITY OF CLEVELAND, V. DANIEL T. MILLER ET AL.

Decided, June 7, 1911.

*Courts and Necessary Legislation for their Establishment—Two-Thirds Vote of the General Assembly Required, When—But a Majority Vote Sufficient to Modify an Existing Act—Effect of Repealing Acts, and of the Re-enacting of Parts of Acts so Repealed.*

1. The General Assembly establishes a court when it enacts that there shall be a court, fixes the number of judges, defines the jurisdic-

tion and prescribes the procedure to be followed therein; to do this requires a two-thirds vote, but a court may be abolished or its jurisdiction or functions modified by a majority vote.

2. The act of May, 1910, creating a municipal court for the city of Cleveland, received a two-thirds vote in the General Assembly and was a valid enactment; and inasmuch as the amendatory act of 1911 does not attempt to create a new municipal court, but only modifies in some respects a court already established, a majority vote was all that was necessary to render the enactment valid, and the original as so amended authorizes the expenditure of public funds.

*A. Mendelson* and *Theo. L. Strimple,* for plaintiff.
*Newton D. Baker,* contra.

PHILLIPS, J.

In May, 1910, the Legislature, by the requisite two-thirds vote, passed an act establishing the Municipal Court of Cleveland. The judges and clerk of said court were to be elected in November, 1911, and to take office January 1, 1912.

The recent session of the Legislature amended and repealed thirty-nine of the forty sections of said act, leaving undisturbed only the first section thereof, which is in these words:

"That there shall be, and hereby is, established in and for the city of Cleveland, a municipal court, which shall be a court of record, and shall be styled 'the Municipal Court of Cleveland,' hereinafter designated and referred to as the municipal court."

The amendment, while it re-enacts several of the repealed sections *in haec verba,* increases the number of judges, enlarges the jurisdiction, makes changes in the procedure, abolishes the police court, etc.

The defendants, acting as a board of deputy state supervisors and inspectors of elections, are about to call a primary election for the nomination of candidates for the offices provided for in the act as amended, and to expend public funds of the city for that purpose; and the plaintiff, a tax-payer of the city, asks that they be enjoined, on the ground that said amendment is void, because it did not receive a two-thirds vote of both

branches of the Legislature—only sixty-five of the one hundred and nineteen members elected to the House of Representatives having concurred therein.

The Constitution vests the judicial power of the state "in a supreme court, circuit court, courts of common pleas, courts of probate, justices of the peace, and such other courts, inferior to the Supreme Court, as the General Assembly may from time to time establish"; and then it provides that "the General Assembly may * * * establish other courts, whenever two-thirds of the members elected to each house shall concur therein." Article IV, Sections 1 and 15.

It is claimed, on the one hand, that by the said amendment the Legislature undertook to "establish" a court, and that therefore two-thirds of each house should have concurred therein; but that the repealing clause, requiring only a majority vote, was duly enacted, and worked a repeal of the thirty-nine sections of the original act; so that, by the repeal of the one act, and the invalidity of the other, there is no law establishing the municipal court.

On the other hand, it is urged that Section 1, which was not repealed, established the court; so that the amendment neither abolished that court, nor does it create one de novo. I am told this is the view taken by the legislators when they passed the amendatory act, not amending, and not repealing, Section 1 of the original act.

We are dealing with a court. And what is a court? Without attempting to be severely accurate, I may say that a court is a governmental body or tribunal clothed with the judicial function. To constitute a court, there must be a judge or judges, and he or they must have a defined and delegated jurisdiction. But before we can have judges and jurisdiction, these must be provided for by the Constitution or by law.

For the Legislature to enact that there shall be a court; for it to fix the number of judges, to define the jurisdiction, and to prescribe the procedure, etc., is to establish a court. This is what may be done only by a two-thirds vote. And this was done, and properly done, by the original enactment.

If I have rightfully defined a court, and the establishment of a court, it must be very clear that Section 1 of the original act, standing alone, would not *establish* a court. And it is equally clear that Section 1 and the amendment, if they stood together, as an original enactment, properly passed, would establish a court.

We must now inquire whether it was within the legislative competency to do, by a mere majority vote, what the amendment purports to do. And first, what may the Legislature do by a mere majority vote? What is the criterion for distinction? The Constitution says that "no law shall be passed in either house, without the concurrence of a majority of all the members elected thereto."

To determine the right and power of a mere majority of each house to make, amend, or repeal a law, we may safely start, I think, with Judge Brinkerhoff's *dictum,* in 7 O. S., 336, where he says:

"The general provision of the Constitution is that a concurrence of a majority of the members elected to each house shall be sufficient for the enactment and the repeal of laws. The cases where it is otherwise provided in the Constitution are exceptional in their character, and ought not, we think, to be extended by construction."

This language of Judge Brinkerhoff states a sound principle of construction. And it is not mere *obiter;* it states a principle involved in the decision of that case, and is part of the *ratio decidendi.*

If this be a safe starting-point, it must follow, that the only limitations of this general power of a mere majority must be express limitations found in the Constitution; and there are none bearing upon the question here involved.

In the case just referred to, it was held that the Legislature, in the exercise of this general power, may, by less than a two-thirds vote, *abolish* a court which was established, and could be established only by a two-thirds vote. And this doctrine has been applied by the courts of the state generally.

Applying this doctrine to the case in hand, it was competent for the Legislature, by a mere majority vote, to amend or to

repeal the act of May, 1910, establishing the municipal court. Anything short of *establishing* the court might be so done.    If a court had been organized under the original act, I suppose it would not be questioned that by a majority vote the Legislature could have increased the number of judges, could have reduced the number, could have enlarged or reduced the jurisdiction could have changed the salaries, the terms of the judges, the times for their election, etc.; for while any of these acts would have changed the court, none of them, nor all of them, would have *established* a court.    And by a majority vote the Legislature could have abolished the court.    But it could not, by such vote, abolish the court and create another.

Seeing, now, what the Legislature might do, and what it might not do, by a mere majority vote, let us see just what it has done by the act of 1911.    And here let me premise, that the ultimate question is, not what was done by the act of 1911, but what is the *combined effect of the two enactments?*

Much stress has been laid, *arguendo,* upon the repeal of the former act.    In considering this aspect of the case, it must be kept in mind that one section of the original act was not repealed; that some of the sections repealed were re-enacted *verbatim;* that many sections were retained in part; that the name and general character of the court were not changed; and that when the repealing clause went into effect, *eo instanti* the body of the new act went into effect, leaving no hiatus.

I have examined a line of authorities as to the effect of repealing an act, and at the same time re-enacting and incorporating into the new act parts of the law so repealed, and I find the rule to be well settled that in such case the parts of the old law so re-enacted are to be regarded as not having been affected by the repeal.

Sutherland on Statutory Construction says:

"The portions of the amended sections which are merel copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts, or the changed portions, are not to be taken to have been the law at any time prior to the passage of the amended act.    *
*    *    Where there is an express repeal of an existing statute

and a re-enactment of it at the same time, or a repeal and a re-enactment of a portion of it, the re-enactment neutralizes the repeal, so far as the old law is continued in force. * * * But a repeal is not rendered inoperative by a re-enactment, where they are not simultaneous—where there is an interval of time after the repeal takes effect, and before the re-enactment goes into operation.''

And again this author says:

''Where an act is amended and revised, and the former act expressly or by implication repealed, such provisions of the old law as are *substantiallly* re-enacted are deemed to be continuous.'' Volume 1, Sections 237, 238, 273, citing a multitude of cases.

To the same effect, see *Endlich on the Interpretation of Statutes,* Section 490.

In *Fullerton* v. *Spring,* 3 Wis., 667, the court, following this rule, says:

''There is no change in the law. The re-enactment of the new is simultaneous with the repeal of the old provision, and both are the same. * * * It was said on the argument, that there was an instant of time between the taking effect of the new statute and the expiration of the old. But it is difficult to perceive by what process such instant of time could be estimated. The new statute took effect at the same instant with the repealing statute. When the Legislature re-enacted the same provision, and provided for its taking effect at the same time as the repeal of the old statute, it is clear that they intended to continue such provision in force without interruption.''

Applying this logical and well-settled rule to the case in hand, it is clear that by the amendatory act the Legislature did not intend to, and did not in fact, abolish the court established by the former enactment; that it retained and continued in force so much of the former statute as not to emasculate or destroy the former act; and that it did not undertake or intend to creat a new or different court. On the contrary, the clear purpose, and the evident effect, of what they did was, to make changes in a court already established, without affecting its general character, or its general purpose. The new act (differ-

entiating what is new from what is old therein) does not create a tribunal and confer the judicial function upon it, which I understand to be the *establishing of a court*, within the meaning of the Constitution.

The case of *The People* v. *Opel*, 188 Ill., 194, was cited in argument. The court there held that, under the Constitution and statutes of Illinois, a probate court could not be said to be *established* in a county until it had a judge. The court was considering the question as to when a *vacancy* in the office could be said to have occurred, to be filled by special election. The definition of a court in that case was purely *pro re nata*, and must be restricted to the situation with which the court was then dealing.

In this case, the Constitution expressly empowers the Legislature to *establish* a court. The Legislature can not select and qualify judges for a court so established; so, for the Legislature to *establish* a court in Ohio must mean something short of supplying it with judges in office. I think the Illinois case is in no sense authority in this case.

I find that the municipal court of Cleveland was duly "established" by the act of May, 1910; that the amendatory act of 1911 does not *abolish* the court so established; that said amendatory act does not *establish* a court; that it was duly passed and is valid law; and that said original act, as amended, authorizes the proposed expenditure of public funds.

The petition will be dismissed.