## DICKINSON V. EICHORN.

**Liquor Nuisance:** INJUNCTION: FORMER DECREE NOT ENFORCED: RES ADJUDICATA. A decree for the injunction and abatement of a saloon nuisance, obtained by a citizen of a county, although not enforced, is a bar to a second suit for the same purpose by another citizen of the county for the abatement of the same nuisance, where there is no showing that the former decree was obtained by the collusion of the parties thereto with the intention of using it to defeat the purposes of the law, and where the attorney for plaintiff is the same in each case. [GRANGER and BECK, JJ., *dissenting.*]

*Appeal from Dubuque District Court.*—HON. D. J. LENEHAN, Judge.

FILED, OCTOBER 29, 1889.

THIS is an action in equity by which the plaintiff seeks to enjoin the defendant from keeping and maintaining a nuisance by unlawfully selling intoxicating liquors in a certain room in a building in the city of Dubuque. The defendant, among other defenses, pleaded that by the decree of said court, entered at the May term, 1888, in a certain action for an injunction against the defendant, in which one Lundbeck was plaintiff, the same relief was granted against the defendant, which is prayed for in this action, which decree remains in full force. There was a hearing upon the merits, and from a decree dismissing the petition the plaintiff appeals.

Dickinson v. Eichorn.

*S. P. Adams*, for appellant.

*Fouke & Lyon* and *McCeney & O'Donnell*, for appellee.

ROTHROCK, J.—It is not denied by the appellant that the keeping of the identical saloon was enjoined by a decree of the district court, entered on the fourth day of September, 1888, and that said decree is still in full force, and there is neither allegation nor proof tending to show that said decree may not be fully enforced. In addition to this state of the record the plaintiff and the defendant entered into the following written stipulation of facts, to-wit: "It is stipulated that heretofore, to-wit, in the September term, 1885, of this court, a suit was commenced in the name of J. B. Lundbeck against the present defendant; that the petition was filed August 4, 1885; that the objects of said suit and the present one are the same, to-wit, the suppression of the sale of intoxicating liquors upon said premises as a saloon; that, whilst the nominal plaintiff is different, the suits were instituted at the instance of the citizens' law and order league of Dubuque, an unincorporated society, whose object was the suppression of the saloons of Dubuque as public nuisance; that the attorney in both suits is the same, and that no one is personally responsible for attorney fees in said suits, said attorney looking solely to what may be obtained by way of costs in said suits for his compensation; that no change had been made in the business of said defendant from the time said first suit commenced down to the time of the trial of the present action; that no new saloon has been established upon said premises since the commencement of the present action; that said first suit was tried at the May term, 1888, of this court, and decree rendered therein on the fourth day of September, 1888, of which the following is a copy: 'Decree and writ of injunction as prayed, restraining defendant from maintaining the nuisance described in plaintiff's petition, and restraining the use of the building described for the purposes

of said nuisance, and that said nuisance be abated in the manner provided by law. Judgment against defendant for costs, including attorney fee of thirty-five dollars. Execution.'" The foregoing stipulation of facts was introduced in evidence upon the trial. The question for determination is, can this second action be maintained and another decree entered for precisely the same thing? that is, for enjoining and abating the same nuisance which is already enjoined and ordered to be abated? It is to be observed that it is conceded that the former decree is in full force, and no reason is stated anywhere in the record, nor even suggested in argument, why it has not been enforced. If a showing were made that the decree was obtained by collusion with the defendant, for the purpose of allowing it to remain without enforcement, and that the same is therefore a fraud upon the court, and intended as an evasion of the law, there might be some ground for maintaining this action; but we need not determine that question, because it is not presented in this record.

Counsel for appellant appear to be of opinion that the action may be maintained because the time alleged in the petition during which the nuisance was maintained is not the same as in the first action. The rule invoked has no application in an action like this. If, in an action to recover damages for a nuisance, the plaintiff recovers a judgment, and that defendant continues to maintain the nuisance, successive actions may be maintained; but it is apparent that in this class of actions one valid injunction is as effective as a thousand would be. In *Livingston v. Gibbons*, 4 Johns. Ch. 570, it was held that, where an injunction has been already granted, a second injunction will not be granted while the first is in force. It is true that the plaintiffs in the two actions are not the same, but it is stipulated by the parties that both are prosecuted in the same interest, and the attorney for the plaintiffs in both of the actions is the same. It is not stipulated that the attorney was the same in both actions, but that he is now the attorney in both. It is therefore a pertinent inquiry, why does he not

order process upon the decree he already controls? It is to be remembered that these are not actions for private nuisances. The plaintiff, as a citizen of the county, stands for and represents the public. *Littleton v. Fritz*, 65 Iowa, 488. If the claim made by counsel for appellant should be sustained, every citizen of a county might maintain an action for injunction at the same time, and each demand a decree in his action enjoining and abating the same liquor nuisance. We cannot consent to establish a rule which might lead to a multiplicity of suits when one action will accomplish the same result.

It is said that the defendant is a persistent violator of the law. If so, the decree entered more than one year ago should have been enforced instead of seeking another decree, which will be of no more binding force than the first. Because a defendant is a criminal, is no reason why the plainest principles of the law of former adjudication should be disregarded. AFFIRMED.

GRANGER, J. (*dissenting*).—I am unable to concur in the conclusion announced in the majority opinion. I think the opinion fairly announces the question to be determined in the case, which is : Is a decree for an injunction and the abatement of a saloon nuisance, obtained by a citizen of a county, which is not enforced, a bar to a suit for the same purpose by another citizen of the county for the abatement of the same nuisance? To have the case well in mind, let the facts be again briefly stated : Lundbeck obtained a decree for an injunction, and the abatement of the nuisance in question, against this defendant. That decree, so far as the record discloses, is enforceable, but not enforced, and the record makes no showing why it is not done. The nuisance still continues. The theory of the majority opinion is that Lundbeck, in obtaining the decree, acted on behalf of the public, and that one decree or injunction is as good as a thousand. I readily accede to the proposition that, as a general rule, a judgment in behalf of a party, whether obtained by himself, or another in his

interest, is a bar to another proceeding in the interest of
the same plaintiff against the same defendant for the same
purpose, and for the reason stated in the majority opin-
ion,—that one judgment is as "effective as a thousand;"
and if that statement is true, as applied to this class of
cases, then, on principle, the holding of the majority in
this is right. The case of *Livingston v. Gibbons*, cited
from Johnson's Chancery Reports, is only as to individ-
ual interests, and the rule in such cases is not ques-
tioned.

I do not accept the statement as to the efficiency of
a judgment as correct, when applied to this class of
cases, and my reasons will appear further on in the
opinion. To a logical determination of the question, I
think we should first look to the law authorizing a citizen
to maintain such a suit, and in its construction we should
recur to the history of its enactment, and the evil which
it seeks to remedy. For many years the enforcement of
the law against the sale of intoxicating liquors devolved,
in the main, upon public officials, and it is a matter of
common knowledge that in parts of the state the law
stood unenforced because of a sentiment against the law
and its enforcement. Grand juries would not indict,
even when testimony before them was conclusive ; and it
is equally true that petit juries, in many cases with a
like showing, would not convict. It was to meet these
conditions, and avoid the influence of such a sentiment,
that a change in the law was made. A necessity was
apparent for escaping such questionable conduct on the
parts of juries, and providing a means by which those
friendly to the law, even if in a minority, could enforce
it. To do this the legislature provided, what has been
regarded as an extraordinary remedy, that any citizen
of a county where a saloon nuisance existed might main-
tain a suit in his own name for its abatement, and enjoin
its further continuance. The law is that any citizen
may maintain such a suit. Now I do not desire to place
any strained construction on the words "any citizen,"
for I can imagine cases where a right or privilege might
be given or confided to "any citizen of a county,"

and, in the very nature of the case, the right or privilege
would be available to but one, who might be the first to
act or accept. But, unless thus limited by circumstances,
the rule of construction is broader, and the language is
to be construed in its ordinary acceptation. I think no
reader of the legislative history of Iowa will question
that the purpose of the legislation in question was the
abatement of the nuisance, and that the door for pros-
ecutions was to be opened sufficiently wide for its
accomplishment. In fact, in legislative councils the
query has been, what character of a law will prove
efficient to close the saloon? and that purpose has been
the guiding star of legislation on that subject. I think
the courts should be very careful in construing the law
not to close the very door which the legislature opened
with a view to render the law effective.

The majority opinion holds, in effect, that, under
the provisions of the law, if one citizen of a county acts,
and procures a judgment, it stands as a bar to all other
citizens of the county from maintaining a suit for the
same purpose, even though the judgment is not enforced.
The effect of such a holding is manifest in the case at bar.
Lundbeck has a judgment which, for reasons unknown
to us, he does not enforce. The defendant says he is
still maintaining the nuisance in violation of a decree
for injunction ; and just as long as Lundbeck will per-
mit the judgment to stand unenforced, other citizens of
the county, and the public, so far as this remedy is con-
cerned, must submit to the prevalence of a nuisance in
their midst. It seems to me that such a holding is
plausible only because the saloon nuisance is one that
is in a measure tolerable. Let us suppose that a senti-
ment was equally favorable to the maintaining of dis-
tilleries in localities where the stench from decaying
substances was spreading disease and death in com-
munities, and, with like difficulties for their suppression,
the legislature had provided the same laws for their
abatement, and some citizens should obtain a judgment
for their abatement, and neglect its enforcement, would
it then be held that such a judgment must stand as a

bar to other proceedings of a like character, and thus jeopardize the lives and health of the people? It would, in such a case, be plainly understood that the legislature intended to invest any citizen with the right to see that the lives and health of the people were protected from the ravages of the nuisance, and, in such a case, I do not think the word "any" would, in effect, be construed to mean the one who might first assume to act. The more reasonable construction is that, as long as the nuisance exists, any citizen has the right to employ the means devoted by the law for its abatement, and, in my judgment, suits may be instituted and multiplied till the result is accomplished. The saloon in contemplation of law is as veritable a nuisance as a slaughter-house or distillery, so situated as to be dangerous to the health or enjoyment of a community.

In cases of obstructions to highways, or other nuisances, any person having an interest distinct from that of the public may maintain a suit for its abatement; and in such a case as many persons as are thus affected may maintain a suit for the same purpose, and it would not be contended in such a case that a suit by one would bar the others. One judgment for abatement enforced in such a case would be as effective as a thousand, and the same would be true of one not enforced. But a judgment not enforced at the suit of one would not be as good as one at the suit of another that would be enforced, and hence any person whose interest is such that he may maintain a suit is not deprived of that right except upon one plea, and that is the abatement of the nuisance. I know it can be said that in such cases the plaintiffs have a personal interest distinct from the public, which is the basis of the right of each to sue; but, if the statute should remove that requirement as to the distinctive interest, and leave the right to any citizen to sue for the abatement, is there any reasoning upon which it can be said that a suit by one of those who might be especially interested would bar the right of another to sue? Now I think the statute in these nuisance cases simply

removes the requirement as to a distinctive interest, and assumes an interest on the part of any citizen of a county, in the interest of his own and the public welfare, to maintain such a suit. I regard the law as an invitation to such persons to aid the public 'in the enforcement of the law, and I do not think the invitation ceases merely because one makes the attempt and fails, from neglect or for any other cause.

I know of no holding that any other person has such an interest in such judgments that they can control them as against plaintiff. It has been held that another citizen of the county has not such an interest as will permit him to intervene in this class of cases, because he has not that private interest therein that is contemplated by the statute governing interventions. *Conley v. Zerber*, 74 Iowa, 699. If this is true, what is there to prevent one friendly to continuing the saloon from bringing the suit, and, with the right to control it, leave a judgment as a shield to the violator of the law? I know the majority opinion is guarded by a statement that, if a showing were made of collusion with the defendant to defraud the court, there might be some ground for maintaining the action. But why devolve the burden of such a showing on the plaintiff in this suit? He knows of the Lundbeck judgment. He knows it stands unenforced, and that this nuisance continues. In fewer words, he knows that the law and the judgment of the court are in fact evaded. What better *prima-facie* showing of a fraud on the court should be required? It is an express provision of the law on this subject that courts shall so construe it as to prevent evasion, and to my mind the case at bar calls loudly for the application of the rule.

To the point that one decree is as effective as a thousand, I can only say that it assumes that, because one plaintiff refuses, or, for some cause, neglects, the enforcement of his judgment, others will do the same. Such an inference does not necessarily follow. I have no reason for saying or believing that the plaintiff in this suit will fail of his duty because others have; and,

if he does, the door should be kept open for the citizen equal to the emergency.

It is said in the majority opinion that the attorney in this case is also the attorney in the Lundbeck case, and submits a query why he does not order process upon the decree he already controls. There is nothing in the record from which we should infer that the attorney controls the actions of his client in this matter, and, if he does in that case, it by no means follows that he can in this. The argument of the case on the part of the defendant makes no reference whatever to bad faith or neglect on the part of the attorney, and my observation is much at fault if the parties in these cases, as in others, leave unsaid any truths that will avail their cause. The arguments of the case present but a single fact in support of this defense, and that is that the Lundbeck judgment, without regard to misconduct or fraud, is a legal defense.

I attach importance to the fact that in this case the defendant stands before the court a confessed violator of the law, and of a decree of the court which he is legally bound to respect. He seems to understand that he can disregard the present decree with impunity, and asks that it be made a barrier against other interference. To my mind the situation plainly illustrates the effect of the rule announced in the majority opinion.

The equities of the case demand a rule more in harmony with the enforcement of the law and the protection of the public against such wrongs. I would reverse the judgment.

Mr. Justice BECK concurs in this dissent.