## WEBB v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.
August 14, 1926.)

### No. 7196.

**1. Intoxicating liquors ⊂⇒278—Injunction to abate nuisance is not perpetual but effective for one year (National Prohibition Act, tit. 2, § 22 [Comp. St. § 10138½k]).**

An injunction issued for abatement of a nuisance under National Prohibition Act, tit. 2, § 22 (Comp. St. § 10138½k), whether or not accompanied by a closing order is not perpetual, but is deemed to have effected its purpose at the expiration of one year, and a subsequent sale of liquor in the premises is not punishable as a contempt for violation of the injunction.

**2. Intoxicating liquors ⊂⇒261.**

"Maintenance of nuisance" implies continuity of criminal action over substantial period of time.

**3. Intoxicating liquors ⊂⇒279—Single sale of liquor on premises is not of itself violation of abatement injunction (National Prohibition Act, tit. 2, § 22 [Comp. St. § 10138½k]).**

An injunction for abatement of a nuisance, issued under National Prohibition Act, tit. 2, § 22 (Comp. St. § 10138½k), is not violated by a single sale of liquor on the premises, unaccompanied by any act showing continuity, as the keeping of liquor on the premises, and which would be insufficient to constitute a nuisance in the first instance.

Faris, District Judge, dissenting.

In Error to the District Court of the United States for the Western District of Missouri; Merrill E. Otis, Judge.

Proceeding for contempt by the United States against Charles C. Webb. From a judgment finding respondent guilty of contempt, he brings error. Reversed with directions.

R. B. Kirwan, of Kansas City, Mo., for plaintiff in error.

Roscoe C. Patterson, U. S. Atty., and H. L. Donnelly, Asst. U. S. Atty., both of Kansas City, Mo.

Before LEWIS, Circuit Judge, and FARIS and PHILLIPS, District Judges.

LEWIS, Circuit Judge. Plaintiff in error complains of a judgment finding him guilty of contempt and imposing on him a fine of $500 and 7 months' imprisonment. The proceeding against him was brought under section 24, tit. 2, the National Prohibition Act (41 Stat. 315 [U. S. Comp. St. Supp. 1923, § 10138½_ll_]) by information, from which and the proof it appears that the district attorney filed in the court below on April 15, 1922, a bill in equity charging Webb and three other named persons with the maintenance of a common nuisance on described premises in Kansas City, as that term is defined by section 21, tit. 2, of said act (Comp. St. § 10138½jj). Injunctive relief was asked under section 22 of title 2 (section 10138½k), on which the bill was bottomed. At final hearing on June 3, 1922, the court found the allegations in the bill to be true, and ordered, as that section directs, that no liquor should be manufactured, sold, bartered, or stored in or upon the premises, described as a certain one-story stone building and basement located on named lots belonging to Webb and then in the possession of Webb and his three named associates. It was further ordered that Webb and his associates be enjoined and restrained from occupying or using the premises for a period of one year, and that the United States marshal securely lock all doors to the building. On October 20th following, the court found that one Buford had become the bona fide purchaser of the premises, and thereupon modified its prior order by ordering that the premises be released to Buford on the giving of a bond in the sum of $1,000, conditioned that intoxicating liquors should not be thereafter manufactured, sold, bartered, kept, or otherwise disposed of in said premises during a period of one year from June 3, 1922. See section 22, title 2. Buford seems to have intended to use the premises in conjunction with his dairy business, but he soon sold to Sinclair, and Webb then went back into possession and managed the business that was carried on there for Sinclair. The whole tract comprised about 7 acres of suburban property, and there were several buildings on it. The stone building that was padlocked and then released to Buford on bond was a well-known place where chicken dinners were served. It had accommodations for 300 people, and that many were at times present and seated for service.

[1] The information for contempt, on which Webb was found guilty, was filed on February 2, 1925, and it charged that Webb on November 4, 1924, sold to one Kissinger about eight ounces of whisky on the premises described in the injunctive order of June 3, 1922, and that the sale was in violation and defiance of that order and was contemptuous. A criminal information was also filed against Webb, charging him with the sale in violation of sections 3 and 29, but that case had not been tried when the hearing in this case was had. It was not claimed that Webb made the sale himself. Mr. Kissinger, a prohibition agent, testified that he went to the place for

dinner on the night of November 4, 1924; that he ordered four drinks of whisky for himself and three companions from a negro waiter, to be brought to them with the dinners; that they got the whisky, and he paid $3 for it. Webb testified that he knew nothing of the transaction; that he had no liquor on the place; that the waiter who served Kissinger was an extra for that night only, that being election day and a large crowd was expected. There was testimony tending to show that Webb knew the waiter was making the sale, consented to its being made, and collected the $3 along with pay for the dinners, and so we accept the court's finding that Webb made it. But there was no evidence that liquors of any kind had been manufactured, sold, bartered, or stored on the premises after the injunctive order of June 3, 1922, aside from this one isolated transaction; and the question presented to us is whether the sale made to Kissinger on November 4, 1924, can be held to have been in violation of the court's injunction of June 3, 1922. At the close of all the evidence, counsel for plaintiff in error moved that he be acquitted of the charge because the evidence was not sufficient to sustain a finding that he was guilty of contempt. The motion was denied, and exception saved.

Applying the facts as they were found by the court to the law, we conceive that two questions were presented for consideration on the motion: First, Had the nuisance been abated and the court's power in the equity suit spent and exhausted when the sale was made? and, second, Did the injunctive order against making sales in the building include an isolated sale such as this, made two years and five months after the court's order, or is it the purpose of section 22 of the act to enjoin only future conduct that would constitute a renewal or continuance of the nuisance? These are questions of law and the answers to them are found in a correct understanding of the act taken in its entirety. Section 21 defines nuisance thus:

"Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance."

And that section further subjects the person who maintains the nuisance to prosecution as having committed a misdemeanor for which on conviction he may be both fined and imprisoned. For the purpose of abating the nuisance, section 22 affords a speedy and effective civil remedy by injunction against those maintaining it and by securely closing the premises against any use for one year. In Schlieder v. United States (C. C. A.) 11 F. (2d) 345, 347, it is said:

"The fundamental principle upon which section 22 depends for its validity is that it is intended to authorize the abatement of a nuisance by a suit in equity and to go no further."

The period named during which the building may by order of court be kept under lock by the marshal must, we think, be taken as the expression by Congress of its judgment that the premises if closed would lose during the lapse of one year the bad reputation which they had acquired as a place of resort by those inclined to encourage violations of section 21, and as declaring a rule that the nuisance would thereby become abated. We are unable to see any other reason or purpose for fixing the time. Of course, the provision for closing is in aid of abatement by injunction and may or may not be resorted to, but here the power was exercised; a bond being substituted by order of the court for a part of that time. Without the closing order, the nuisance might become wholly abated, as effectively so by the injunctive order as if the premises had been kept locked by the marshal. The statute makes no provision for a judicial ascertainment of that fact. Had it done so, and had the fact of abatement been judicially found, the premises thereafter would, we think, be relieved from the taint of unlawful practices and the bad reputation thus cast upon them. In that event it could hardly be said that the decree in the equity suit had not been fully satisfied and the court's power in that suit brought to an end. The premises themselves, standing alone, do not constitute the nuisance. They and the intoxicating liquors kept and used there constitute the unlawful thing, defined as a nuisance. When the building has been cleared of the liquors and the unlawful practices there brought to an end, the nuisance becomes abated. Here there is no word of testimony tending to show that any liquor was manufactured, kept, sold, or bartered in the stone building or elsewhere on these premises from June 3, 1922, to November 4, 1924, a period of two years and five months, and during that time title to the property passed, as found by the court, to a bona fide purchaser. We think on the facts of this case it must be held that the nuisance which the court ordered abated in June, 1922, had been wiped out long before November, 1924, and its decree thus wholly executed. Its judgment had been satisfied, and its power in that suit had terminated.

[2, 3] But, for the sake of argument, let it be conceded that the order of June 3, 1922, enjoining "that no liquor shall be manufactured, sold, bartered, or stored in or upon the premises" was still in force and effect on November 4, 1924, when Webb made the sale to Kissinger. The order followed literally the terms of section 22, and it was that order which was alleged to have been violated, because of the sale to Kissinger. If we adhere to the literal words of the statute repeated in the court's injunctive order, there, of course, can be no doubt of Webb's guilt. The district attorney, in presenting the case below, took that position and argued "that for all time there should be no intoxicating liquor sold there." The learned District Judge at first thought the proposition debatable, but apparently accepted that view in making his final decision. This seems to ignore the one plain purpose of section 22, and excludes from consideration other parts of the act. Did that order cover an isolated sale? There was no attempt to show that the circumstances under which the sale was made to Kissinger constituted a continuance or renewal of the nuisance which the court had ordered abated, nor was that the charge in the information against Webb for contempt. He was also charged by another information criminally with making the same sale. A single sale may be made under circumstances which establish the maintenance or continuance of a nuisance. Lewinsohn v. United States (C. C. A.) 278 F. 421; Schechter v. United States (C. C. A.) 7 F.(2d) 881; Hermansky v. United States (C. C. A.) 7 F. (2d) 458. But the maintenance of the nuisance implies a continuity of criminal action extending over a substantial period of time. Reynolds v. United States (C. C. A.) 282 F. 256; Schechter v. United States, supra. In Barker v. United States (C. C. A.), 289 F. 249, it is held:

"We do not mean to be understood as deciding that a single sale of liquor, or the mere unlawful possession of liquor, under all circumstances may be construed to be a violation of section 21, because so to decide would be to render meaningless the other provisions of the law in which the Congress has denounced these specific acts, and provided punishment for their violation."

The same court held in Muncy v. United States (C. C. A.) 289 F. 780, that sale of a pint of whisky was insufficient to establish the maintenance of a nuisance where no other liquor was found on the premises or on the defendant's person. That is not the charge or claim in this case. The sale to Kissinger is treated as a single sale, clearly made in viola-

tion of sections 3 and 29, tit. 2, of the act (Comp. St. §§ 10138½aa, 10138½p). Reverting to section 22, under which the injunction suit was maintained and the order made, it seems clear that it deals exclusively with the nuisance and provides a method of suppressing it. It grants, so far as needed, the requisite power for that purpose, and we think it discloses no other purpose. Single sales, as such, lie outside of its purview and could not be brought within it. Acts of the defendant which would not constitute the nuisance charged in the equity suit, or its continuance, do not come within the purpose of the section; but acts which could be said to be in continuance of the nuisance before it was fully abated would appropriately be within the power of the court to be exerted in fully and finally abating it; and such acts would be in resistance to the court's order of abatement. This, we take it, is the sense in which the clause in the decree copied from section 22 should be taken; that is, a prohibition of sales which operated to continue the nuisance before it had been suppressed. That was the situation considered by the court in the Lewinsohn Case and in McGovern v. United States (C. C. A.) 280 F. 73. In each sales were continued within a month after the court's order. To accept the view advanced by the district attorney would raise grave doubt as to the constitutionality of that clause, and such doubt should be avoided in applying the statute when it can be given a rational and effective meaning in undoubted accord with the Constitution. U. S. v. Standard Brewery Co., 251 U. S. 210, 220, 40 S. Ct. 139, 64 L. Ed. 229; U. S. v. Jin Fuey Moy, 241 U. S. 394, 401, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854; Panama R. Co. v. Johnson, 264 U. S. 375, 390, 44 S. Ct. 391, 68 L. Ed. 748; U. S. v. Walter, 263 U. S. 15, 44 S. Ct. 10, 68 L. Ed. 137. Webb was not charged with making the sale in continuance of the nuisance which the court had ordered abated, and thus resisting the enforcement of the injunctive order, nor would the proof have sustained such a charge had it been made. He was charged simply with the one sale to Kissinger, made two years and five months after the court's order and after the nuisance which the court enjoined had been abated. The court went no further in its findings on the contempt charge than that he made the sale. That sale was clearly in violation of sections 3 and 29, and on the question of guilt as to that offense Webb had the constitutional right to be appropriately charged and to a trial by jury. To so construe the clause in section 22, embodied in the decree, as

to make his act contemptuous, is, to say the least, a gravely doubtful construction of that section when its evident purpose and the other sections of the act are borne in mind and given their intended meaning and effect; and this is aside from the necessity of restraining the clause within constitutional limitations. In the Standard Brewery Case the Supreme Court said:

"Furthermore, we must remember, in considering an act of Congress, that a construction which might render it unconstitutional is to be avoided. We said in United States v. Jin Fuey Moy, 241 U. S. 394, 401 [36 S. Ct. 658, 659 (60 L. Ed. 1061, Ann. Cas. 1917D, 854)]: 'A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score.'"

We think the court erred in denying the motion at the close of the evidence, and the judgment is reversed with directions to dismiss the information for contempt.

FARIS, District Judge (dissenting). I regret that I find myself unable to agree, either in the result reached by the majority of the court, or in the reasoning and conclusions of law touching the two questions involved. The facts are set out in the majority opinion with meticulous and admirable accuracy. But upon the two decisive questions propounded in the majority opinion I am constrained to entertain views diametrically in conflict with those enunciated by the majority. These two questions are: (a) "Had the nuisance been abated and the court's power in the equity suit spent and exhausted when the sale was made?" and (b) "Did the injunctive order against making sales in the building include an isolated sale such as this, two years and five months after the court's order, or is it the purpose of section 22 of title 2 of the act to enjoin future conduct that would constitute a renewal, or continuance of the nuisance?"

The opinion of the majority seems to answer the first of these questions in the affirmative and the second in the negative. In other words, the sum of the opinion of the majority on this question is, that the injunction mentioned and provided for in section 22 of the act is not a perpetual injunction against the premises and the defendants in the suit while the latter occupy such premises and so long as they occupy the same, but that the injunction operates only for one year against the premises and the defendants in the equity action, even though the defendants continue to occupy such premises.

My view is that the injunction, which finally issues upon a hearing on the merits is a permanent or perpetual injunction, and that *it operates perpetually, at least, as against the premises described and the defendants named in the equity suit,* while occupying such premises. Some discussion has arisen and some diversity of opinion has been held upon the question whether such injunction operates in rem—that is, against the building itself—regardless of the subsequent ownership or occupants. Cf. U. S. v. Boynton (D. C.) 297 F. 261, and U. S. v. Schwartz (D. C.) 1 F.(2d) 718. The latter question is wholly afield from the conceded facts, and is not herein discussed, nor is it necessary to discuss it.

The power to make an order closing the premises, or (as the vernacular has it) "padlocking" them against legal uses for one year, is discretionary and merely incidental to the perpetual injunction, and for the purpose of bringing about a more certain and thoroughgoing abatement of the nuisance. The giving of a bond in the sound judicial discretion of the chancellor, as permitted by this statute, operates merely on the question of permitting use to be made of the premises, short of the actual padlocked period, for lawful uses and purposes, and it has no reference to or vital bearing otherwise on the question of the unlawful use of such premises, or on the extent or duration of the injunction. It is true, that section 22 of the act does not specifically say that the injunctive order is of the nature of a permanent injunction, but subsequent section 24 of title 2 of the act does so denominate it in express language, in providing for the hearing based on contempt.

The term *permanent injunction* has a definite and well-settled meaning in equity, which meaning is well known to both bench and bar. Moreover, the pertinent language of the statute is:

"The court shall order that no liquors shall be manufactured, sold, bartered, or stored in such * * * building, * * * or any part thereof. And upon judgment of the court ordering such nuisance to be abated, the court may order that the * * * building, * * * shall not be occupied or used for one year thereafter." Section 22, tit. 2, Act of Oct. 28, 1919 (Comp. St. § 10138½k).

It will be noted that the language granting power to the court to "order that no liquors shall be * * * sold * * * in such building * * * or any part thereof" is mandatory, and ends the sentence. The next sentence deals with a different phase of the case and is not mandatory, but says that the court may order that the building shall not be oc-

cupied or used for the period of one year, for any use either lawful or unlawful.

In short, the court is required in a proper case and upon sufficient evidence to issue an injunction, and the court may, or may not in its discretion, further order that the premises be padlocked, against lawful uses even, for a period of one year.

There are grave practical difficulties, which are so obvious as not to call for exposition, in any other view. Surely, it ought not be necessary to bring an equity action annually against the identical tenant, or the identical owner, or the identical building. I am not contending that the injunction is or ought to be perpetual against an innocent owner, present or subsequent, or as against a subsequent tenant not a party to the equity action, but I am urging that it is and ought to be perpetual, as against the guilty premises and a guilty owner, or a guilty tenant who was a party to the equity action and against which the injunctive order runs. Any other view will result in the practical destruction of the statute. Confessedly, I have not found any federal case in which the question of the duration of the injunctive order has been ruled, or in which the provisions, on this question, of section 22 of the National Prohibition Act have been construed. The learned trial court took the view that the injunction was a perpetual one, as note his order. The case of State v. Durein, 46 Kan. 695, 27 P. 148, construing the Kansas statute on the germane point and the cases of State v. Prouty, 115 Iowa, 657, 84 N. W. 670; Dickinson v. Eichorn, 78 Iowa, 710, 43 N. W. 620, 6 L. R. A. 721, and State v. District Court, 176 Iowa, 178, 157 N. W. 737, construing the Iowa statute, hold that the injunction is a permanent one. It is true, the Kansas statute, as well as the Iowa statute, specifically provided for a permanent injunction. But it has been held that the power of a court of equity to abate a nuisance by an injunction existed before the Volstead Act was passed. Grossman v. U. S. (C. C. A.) 280 F. 683; U. S. v. Gaffney (C. C. A.) 10 F.(2d) 694; Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205. The point here vexing the court was not at all involved in the case of Schlieder v. United States (C. C. A.) 11 F.(2d) 345, so I am not able to regard the latter case as at all enlightening upon the point herein up for judgment.

While it is regrettable, since it creates uncertainty, that Congress neglected to set out specifically in section 22 the precise nature of the injunction contemplated, yet, as known to the profession and the hornbooks, injunctions are ordinarily of two kinds only, tempo-rary (or, synonymously, interlocutory) and perpetual (or permanent). As seen already, even absent the National Prohibition Act, courts of equity have the power to abate a nuisance by injunction (14 R. C. L. 380); and it will hardly be contended that such an order, issuing after a hearing on the merits, is not a perpetual injunction.

Congress could, it may be, have provided a limit to the extent and duration of the injunctive order provided for in section 22, but in my opinion it clearly did not do so. For I find no such interrelation between the mandatory requirement that the court shall issue the injunctive order and the merely permissive provision that the court may, in its discretion, go further and close the guilty premises for one year against all uses, as warrants the view that the one-year limit of closure in any respect fixes a limit to the duration of the injunction, or that Congress intended it should so fix it.

Upon the second question above reserved for discussion I am of the opinion that the language of the decree herein, which followed the language of the statute, forbade a single sale of liquor, whether such sale and the circumstances of its making constituted a nuisance or not. For the sake of the argument, and perforce, perhaps, the weight of the ruled cases, it may be conceded that this single sale, without more, did not constitute a nuisance. But it makes no difference here as to this point, because the information herein charged a sale and not a nuisance, and so, if such sale had constituted a nuisance, since defendant was not so charged, he could not have been legally convicted of a nuisance.

However, as said already, the statute provides in section 22 thereof that, if the facts set up in the bill are found to be true, the court "shall order that no liquors shall be * * * sold, * * * in such * * * building * * * or any part thereof." These facts the chancellor found, and thereupon he entered the injunctive order forbidding the sale, bartering, or storing of liquor in the building.

Obviously, then, a single sale was one of the things which defendant was forbidden and enjoined from doing, perforce the statute, which expressly so provides. If he made a single sale, he violated this injunction, and became potentially a contemnor. The majority opinion concedes, and I agree, that he made a sale. It is to be noted that the statute, which the injunctive order here fairly follows, does not say that the chancellor shall order that no nuisance shall be thereafter committed in the building; it can hardly be said even to connote the forbidding of a nui-

sance, except by implication, through continuity or multiplicity of sales, or storing, or bartering of liquor. Clearly, Congress did not say that after proof of a nuisance on the trial of the equity case, and after the entry of the injunctive order, that contempt should thereafter consist *only* in the setting up again of a like nuisance in such premises. As said, nuisances after the entry of the injunctive order are scarcely implied even as forbidden acts of contempt; except as such sales, storing and so on, might incidentally and adventitiously constitute a nuisance; but what are forbidden are acts of *sale,* storing, making, and bartering of liquor in the padlocked premises. That is plainly what Congress said and what it meant; that is, that the making, after the injunction, of a single sale in the guilty building by a defendant who had been expressly enjoined from so doing, should constitute contempt, for which such defendant could be punished by the court in a summary way as specifically provided in section 24.

It is of course true that by other provisions (see sections 3 and 6, tit. 2 [Comp. St. §§ 10138½aa, 10138½c]) Congress denounced a sale of liquor as a crime. Such a crime can ordinarily be tried only by a jury, pursuant to the constitutional guaranty of such a trial. Whether the case of Mugler v. Kansas, supra, does not settle this question in favor of a trial by the court alone in a case of contempt is not material. Personally, I have no doubt that this question is settled in favor of such a trial by the above case and many others.

But the material points are, (a) that Congress has by one statute clearly said that the chancellor has power to forbid by an injunctive order a single *sale,* and (b) that Congress has likewise just as clearly said by another statute that the trial for the contempt involved in the act of a single sale may be had before the court without a jury and summarily. Both of these statutes are presumptively valid, and, mixing figures of speech in order to state a legal truism, they are the "lions in the path of the court." In short, till these statutes are timely attacked as constitutionally invalid, they are binding on the courts. One of these statutes merely defines what is forbidden by the order, to wit, a sale, inter alia, and to that extent, in connection with sections 3 and 6, may be said to define a crime as an act of contempt. This statute might, arguendo, be challenged as constitutionally invalid, for that it enjoins the commission of a crime, in a case wherein the law itself provides a full and adequate remedy. But, as said, I think this ques-

tion is settled by the Mugler Case, supra, and by the cases of Wedel v. U. S. (C. C. A.) 2 F.(2d) 462, Lewinsohn v. U. S. (C. C. A.) 278 F. 421, and U. S. v. Reisenweber (C. C. A.) 288 F. 520. Moreover, this argument would apply with equal force, if Congress had made the commission of a nuisance an act of contempt, because a nuisance is also denounced as a crime by the act.

The other statute, by providing for a trial for contempt by the court, without a jury, of an act elsewhere in the act denounced as a crime, might arguendo be said to violate the constitutional guaranty of trial in a criminal case by a jury. Passing the Mugler Case, and what it holds as to the right of a state to pass a law so providing, in virtue of its police powers (which powers in toto are now held by the United States, perforce the Eighteenth Amendment), the question is, How are the courts to avoid these two plain declarations of Congress? However bad a statute may be, the courts are bound by it till it has been held to be constitutionally invalid. The statute last mentioned deals with the matter of the trial of the defendant and forbids the right to have a jury on such trial. It is a right, if it exists, which he should have raised in a timely way, as soon as was "procedurally possible," as the courts are fond of saying. If it was a statute, *as it is not,* which created a crime, and being constitutionally invalid, yet defendant had been convicted thereunder, he could raise it in the last sentence of his brief. But not so here in my opinion (3 C. J. 710); for all Congress did was to make the doing of certain things acts of contempt, as conversely, in the Clayton Act (38 Stat. 730), it permitted the lawful doing of a certain act, namely, peaceful picketing, which theretofore was an act of contempt. It was his duty to raise the question of invalidity of these sections when he first was hurt or began to be hurt by them. But he has not raised this question at all, in any objection or suggestion, or in any line, first or last, of his brief. Till he has timely raised the questions of their validity, the two statutes are binding on the courts, because the presumption is in favor of, and not against, the validity of a statute. Before this case can be reversed, I think this court must hold, either that the statute, which makes a sale (in the teeth of an injunctive order so forbidding), an act of contempt, is unconstitutional, or it must hold that the statute, which provides for a trial for such act of contempt before the court without a jury, is unconstitutional, or put a strained construction on section 22. I see no getting away from one of these three things. We must

either follow these two plain statutes, or we must of our own motion, absent even a suggestion anywhere by defendant, declare them unconstitutional. It is the settled rule in all courts not to decide constitutional questions till such questions arise on the record before the court. Neither upon the record here, nor in the briefs, is there any hint that either section 22 or section 24 is in the behalves mentioned, or upon any other phase, unconstitutional. I have found no case directly in point on the question whether one accused of a misdemeanor, and tried therefor without a jury, may raise this question at any time, or, not raising it at all, may have it raised for him by an appellate court. Under the rules of this court, and absent a statute so permitting, I think he could; but the general rule seems well settled that questions as to the *constitutionality of statutes* must be timely raised below and as soon as they arise (3 C. J. 710); otherwise courts are bound by such statutes.

In view of the cases of Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205, Eilenbecker v. Plymouth County, 134 U. S. 31, 10 S. Ct. 424, 33 L. Ed. 801, and Wedel v. United·States (C. C. A.) 2 F.(2d) 463, I am convinced that section 24 is not invalid, for that it deprives the defendant of the right to a jury trial in a criminal case. I am not convinced that section 22 is invalid because arguendo it seems to enjoin the commission of a crime. Originally and initially this of course cannot be done, but, following a trial and a decree in equity, as here, and on a proceeding for contempt I think the law and the Constitution warrant such action. I repeat, that in my opinion the situation requires that we hold one or both of these sections invalid constitutionally, or that we construe section 22 as permitting an injunction for one year only, before we can reverse this case. I am of the opinion that these sections are constitutional and that the injunction provided for is a perpetual injunction, within the conditions above limited.

Holding these views on the two decisive points involved, I am compelled to dissent.