## UNITED STATES v. ALL BUILDINGS, ETC., KNOWN AS WALL PROPERTY et al.

District Court, D. Kansas, Second Division. November 5, 1928.

No. 523-N.

Al F. Williams, U. S. Dist. Atty., and Alton H. Skinner, Asst. Dist. Atty., both of Topeka, Kan.

Hal M. Black, Arnold Todd, and Clyde Hudson, all of Wichita, Kan., for defendants.

McDERMOTT, District Judge. This is an action to enjoin a nuisance under sections 21 and 22 of the National Prohibition Act (27 USCA §§ 33, 34). A motion to dismiss has been filed, on the grounds that the bill is sworn to on information and belief; that there is an adequate remedy at law; that the bill does not state facts sufficient to justify the relief sought. The evidence has been taken and the entire matter submitted to the court for decision on the merits. The owner of the property, Mr. J. W. Craig, has intervened. Since the taking of the proof, any question as to the verification of the bill is of no importance.

From the proofs it satisfactorily appears: J. W. Craig is the owner of 25 acres of ground a short distance from the city of Wichita. Some time in 1927 this land was leased to one Morris for $75 a month, the lease containing the express provision that the lessee should carry on no business which was contrary to the laws of the state or the United States. The defendants, James Stiff and May Stiff, operated a public eating house on the premises, which was ostensibly for the purpose of service of chicken dinners. Elaborate precautions were taken by the tenant to see that only properly identified guests might partake of these chicken dinners. A steel fence seven feet high, built with a projection on the top of it to prevent any one

climbing it, together with a locked gate, was constructed, so that no passing tourist, without proper credentials, might partake of the fare offered. In December of 1927 the place was raided, and intoxicating liquor was found; prior to that time the place had been raided many times, without success, by the sheriff of Sedgwick county. Mr. Craig's attention was called to a newspaper report in 1927, stating that his property was being used for illicit purposes, describing the location and giving a picture of the premises. He stated that his attention was called to these raids and these newspaper reports in 1927, and that he strove diligently to find out the truth about the matter, although he never went to the place but once. He said that he believed it was primarily the duty of the public officials to detect crime on his place. Notwithstanding these circumstances, when the lease expired in March of 1928, he renewed it to the same tenant, but doubled the rent, and since that time has been collecting $150 a month rental. He said he knew of this rather unusual fence, but that his tenant had told him it was erected for the purpose of keeping out hi-jackers.

In August of 1928 investigators went to the premises and asked for liquor, but were told by the keeper of the gate that they would have to see some one in the house about that. One of the men in the house came out and told them that they had beer and whisky there, but the town was so full of undercover men they could take no chances without further identification. The investigators never did get into the premises, but stopped a departing guest, who as a favor to them returned and brought them some alcohol. Seven cars were seen coming out of the gate at 5 o'clock in the morning. A little later officers armed with a search warrant went to the premises and demanded admission, whereupon the defendant, Mrs. Stiff, turned and ran for the house. The gate was broken down, and the lady was stopped as she was engaged in the business of pouring liquor down the sink. Mr. Stiff, the defendant, stated to the officers that he was not primarily engaged in the liquor business; that it was primarily a gambling place, and they kept just enough liquor to keep the game going. Waiters' checks were found with marks indicating the sales of liquor, and Mr. Stiff acknowledged it. Mr. Stiff did not take the stand.

Considering all of the circumstances, and particularly the physical surroundings, the precautions against the entrance of those without credentials, the permanent character of the establishment, and the entire record,

it is quite impossible to draw any other conclusion, except that this was a roadhouse that was regularly engaged in the business of the violation of the National Prohibitory Law.

■ While the knowledge of the owner is of no importance, as the proceeding is one against the property, and not against individuals [Engler v. U. S., 25 F.(2d) 37 (8th C. C. A.)], yet it is not difficult to conclude that the owner had such reasonable grounds to suspicion the violation of the law as to charge him with notice. The erection of expensive improvements, including the steel fence, the continual raiding of the property, the newspaper accounts, and the other matters, should have sufficiently challenged his attention to the situation as to have induced him to do more than renew the lease at double the already high rental, a circumstance to be considered in itself.

■ The argument advanced that a civil remedy for injunction will not lie where there is an adequate remedy at law, or until there has been a prior conviction, has been answered many times by the courts. The criminal sections of the National Prohibitory Law are for the purpose of punishing offenses that have occurred. The civil remedy of injunction is for the purpose of preventing violations of the law that are apt to occur in the future. In a criminal action, the question is: Did the defendant do the thing charged? Under the civil action for injunction the question is: Is there a reasonable probability that, unless enjoined, the premises will be used in the future for unlawful purposes?

No hard and fast rule can be laid down for the determination of this question of fact. As has been said by many courts, that question may be answered in the affirmative by evidence of one sale, or by evidence of no sale, where the circumstances are such that a reasonable man must conclude that an unlawful business is being carried on. On the other hand, it seems quite clear that there might be evidence of a dozen sales, for example, by an itinerant bootlegger in a hotel room, without there being proof of the fact that there was any reasonable probability of offenses occurring on the premises in the future. There is much law on the subject.

In Engler v. United States, 25 F.(2d) 37 (8th C. C. A.), a permanent soft drink establishment with liquor on the premises, together with the evidence of some isolated sales, were held ample to support the injunction; that the owner of the premises is not a necessary party, as the proceeding is one in rem; that change of tenants is not in

itself sufficient to show that the owner has abated the nuisance; that a nuisance, once shown to exist, is presumed to continue until the owner proves the contrary; and that an acquittal in a criminal prosecution is not a bar to proceedings under the nuisance section.

In Murphy v. U. S., 272 U. S. 630, 47 S. Ct. 218, 71 L. Ed. 446, it was held that a nuisance may be abated, whether or not the owners have been guilty of a crime; that the purpose of the nuisance section is prevention, and a judgment thereunder is not a second punishment for the same offense. In Farrell v. United States, 21 F.(2d) 318 (3d C. C. A.), possession alone by a tenant was found sufficient to support an injunction, where the other circumstances indicated a permanent establishment. The same court in United States v. Ward (C. C. A.) 6 F.(2d) 182, held that the number of sales of liquor was not of particular importance; that the pertinent circumstances must be taken into consideration in determining the question of fact.

In Hand Co. v. United States (C. C. A.) 2 F.(2d) 449, the court commented on the circumstances of high fences with barbed wire entanglements, coupled with the number of cars that came and went from the premises. In Denapolis v. United States, 3 F. (2d) 722 (5th C. C. A.), the evidence consisted of one sale, together with subsequent possession, on premises that were ostensibly used as a restaurant. In Rossi v. United States, 16 F.(2d) 712 (8th C. C. A.), the evidence showed a roadhouse located near Denver, where it was conceded that liquor was not in fact sold. The owners of the ranch furnished the place, and provided the necessary appurtenances; guests could either bring their own liquor, or could purchase it from bootleggers, who were not connected with the establishment. The court found this evidence ample to permanently enjoin the premises.

The Fourth Circuit, in Barker v. United States (C. C. A.) 289 F. 249, held that, while a single sale of liquor, or unlawful possession, does not necessarily create a nuisance, yet the circumstances surrounding the sale or possession may be such as to warrant the inference that the single act was part of a habit and therefore should be enjoined. The same court, on the same day, held that a single act of possession in a home was not sufficient to support an injunction. Muncy v. United States (C. C. A.) 289 F. 780. In United States v. Reisenweber (C. C. A.) 288 F. 520, the Second Circuit held that a single

sale, with attending circumstances which indicated other dealings in liquor, was sufficient to justify the granting of the relief sought. The Ninth Circuit, in Young v. United States (C. C. A.) 272 F. 967, held that evidence of one sale in a well-equipped barroom was sufficient.

Counsel cite Webb v. United States, 14 F.(2d) 574 (8th C. C. A.); 49 A. L. R. 612. It was there held that a contempt proceeding for violation of an injunction could not lie after the nuisance enjoined had been abated, upon evidence of a recurrence that did not in itself amount to a nuisance, a point not here presented.

One of the first expressions of the courts on the subject, and a case which has been often cited is that of Lewinsohn v. United States (C. C. A.) 278 F. 421 (certiorari denied 258 U. S. 630, 42 S. Ct. 463, 66 L. Ed. 800) where the court held:

"Counsel stresses the necessity of proving repeated sales in order to justify a finding of a common nuisance, citing U. S. v. Cohen (D. C.) 268 F. 420. But such a test is neither an accurate nor an exclusive one. The court might well conclude from evidence of a single sale that the room or the building was a common nuisance and that it was a place where liquor was 'being manufactured, sold, kept or bartered' in violation of the statute. No doubt repeated sales of the same beverage on other occasions and under other circumstances might justify greater certainty in the trier's mind as to the use to which the building was being put. There could be, however, an almost irrefutable conclusion drawn from a single sale, provided the facts surrounding such sale warranted the inference that it was one of the ordinary and usual incidents of the business there conducted. To illustrate: Assume A., B., and C., as strangers, enter a room, having the appearance and equipment of a saloon, and well occupied by customers, and approach the bar and, openly and in such a tone as to be heard by all, ask the price of a drink of whisky, are informed that it is 75 cents a drink, and thereupon pay the money. The whisky is poured out and there drunk, all in plain sight of those present. Could there be any question that such evidence would support a finding that the premises were being used as a common nuisance within the definition of section 21 of the act? In fact, such evidence might be much more persuasive and conclusive than several gifts or sales of liquor made secretly and by one other than the proprietor; also it might be more persuasive than the mere discovery under a search warrant

of a considerable quantity of liquor contained in bottles, duly sealed, unaccompanied by any evidence that such liquor had been brought to the premises since the passage of the Volstead Act."

The authorities leave no doubt as to the law on the subject. The burden is upon the government to prove by evidence that the property sought to be enjoined is being used for an unlawful purpose, and that there is reasonable probability that such use will continue in the future. The evidence in this case leaves no doubt that the premises used here were for the purpose of selling liquor, and that such use is apt to continue in the future, as it has been carried on in the past, unless enjoined. That the sale of liquor was incidental to the principal business of gambling is not a defense.

The motion to dismiss is denied. A decree will be entered, decreeing that the buildings and appurtenances on the property described are a nuisance; that such nuisance shall be abated; that the defendants James Stiff and Mrs. May Stiff, and the intervener, J. W. Craig, be enjoined from bartering, selling, keeping, or possessing intoxicating liquor on said premises; that no liquors shall be manufactured, sold, bartered, or stored in such buildings; and that such buildings shall not be occupied or used for one year, from December 1, 1928, unless the owner, lessee, tenant, or occupant thereof shall give bond, with sufficient surety to be approved by this court, in the sum of $1,000, payable to the United States, and conditioned that intoxicating liquor will not be manufactured, sold, or possessed on said premises for a period of one year, and that the person giving the bond will pay all fines, costs, and damages that may be assessed for any violation of the National Prohibition Act upon said property, during the period of one year.